Matter of Johnson (2023 NY Slip Op 04772)

Matter of Johnson

2023 NY Slip Op 04772

Decided on September 27, 2023

Appellate Division, Second Department

Per Curiam.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on September 27, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

HECTOR D. LASALLE, P.J.
MARK C. DILLON
COLLEEN D. DUFFY
BETSY BARROS
LINDA CHRISTOPHER, JJ.

2021-03808

[*1]In the Matter of Patrick Johnson, admitted as Patrick W. Johnson, an attorney and counselor-at-law. Grievance Committee for the Tenth Judicial District, petitioner; Patrick Johnson, respondent. (Attorney Registration No. 2279990)

DISCIPLINARY PROCEEDING instituted by the Grievance Committee for the Tenth Judicial District. The Grievance Committee commenced this disciplinary proceeding pursuant to 22 NYCRR 1240.8 by the service and the filing of a notice of petition and a verified petition, both dated May 27, 2021, and the respondent served and filed a verified answer dated June 10, 2021. By decision and order on application dated August 24, 2021, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. The respondent was admitted to the Bar at a term of the Appellate Division of the Supreme Court in the Second Judicial Department on June 21, 1989, under the name Patrick W. Johnson.

Catherine A. Sheridan, Hauppauge, NY (Ian P. Barry of counsel), for petitioner.
Aidala, Bertuna & Kamins, P.C., New York, NY (Barry Kamins of counsel), for respondent.

PER CURIAM.

OPINION & ORDER
The Grievance Committee for the Tenth Judicial District served the respondent with a notice of petition and a verified petition, both dated May 27, 2021, containing eight charges of professional misconduct. The respondent served and filed a verified answer dated June 10, 2021, admitting all of the allegations set forth in the charges and requesting a hearing to present evidence in mitigation. Subsequently, the Grievance Committee served and filed a statement of disputed and undisputed facts dated July 14, 2021, and requested the appointment of a special referee for a mitigation hearing. The respondent served and filed a statement of disputed and undisputed facts dated June 26, 2021, indicating that all of the facts and allegations in the petition [*2]were undisputed, but denied that he intentionally misappropriated funds. By decision and order on application dated August 24, 2021, this Court referred the matter to the Honorable Charles J. Thomas, as Special Referee, to hear and report. A prehearing conference was held on September 24, 2021, and a hearing was conducted on October 22, 2021. In a report dated February 14, 2022, the Special Referee sustained all eight charges in the petition. The respondent now moves to confirm the Special Referee's report and to grant such further relief as the Court deems just and proper. The Grievance Committee also moves to confirm the Special Referee's report and to impose such discipline upon the respondent as the Court deems just and proper. In view of the admissions by the respondent and the evidence adduced at the hearing, we find that the Special Referee properly sustained all eight charges.
The Petition 
The petition contains eight charges of professional misconduct related to the respondent's IOLA account. The respondent maintained the IOLA account at Capital One Bank, titled "PATRICK W. JOHNSON, P.C.-ATTORNEY ESCROW ACCOUNT" (hereinafter the IOLA account). Between June 30, 2016, and May 5, 2017, the IOLA account balance consistently fell below the balance which the respondent was required to maintain for several client matters, which varied throughout the months. The first five charges of the petition allege that the respondent misappropriated funds entrusted to him as a fiduciary, in violation of rule 1.15(a) of the Rules of Professional Conduct (22 NYCRR 1200.0).
Charge one alleges that on June 30, 2016, the respondent was required to maintain at least $163,194 in the IOLA account in connection with four client matters, but the IOLA account balance was $136,208.49, a $26,985.51 deficit. As of July 12, 2016, the respondent was required to maintain $406,000 in the IOLA account in connection with five client matters, but the balance was $372,239.82, a $33,760.18 deficit. As of July 29, 2016, the respondent was required to maintain $408,539.33 in the IOLA account in connection with six client matters, but the balance was $389,313.05, a $19,226.28 deficit.
Charge two alleges that as of September 30, 2016, the respondent was required to maintain at least $430,086.30 in the IOLA account in connection with eight client matters, but the balance was $413,290.14, a $16,796.16 deficit.
Charge three alleges that between on or about October 26, 2016, and on or about January 4, 2017, the respondent was required to maintain at least $369,717.73 in connection with five client matters in the IOLA account. On October 31, 2016, the IOLA account balance was $328,593.67, a $41,124.06 deficit. On November 17, 2016, the IOLA account balance was $305,028.50, a $64,689.23 deficit. On January 4, 2017, the IOLA account balance was $349,884.88, a $19,832.85 deficit.
Charge four alleges that as of February 1, 2017, the respondent was required to maintain at least $114,000 in the IOLA account in connection with two client matters, but the balance was $85,783, a $28,217 deficit.
Charge five alleges that between at least February 2, 2017, through May 5, 2017, the
respondent was required to maintain $88,000 in the IOLA account, representing a down payment for a real estate transaction concerning the respondent's client, Tom Rice. On March 3, 2017, the IOLA account balance was $75,922.80, a $12,077.20 deficit. On March 31, 2017, the IOLA account balance was $64,444.63, a $23,555.37 deficit. On May 2, 2017, the IOLA account balance was $62,527.96, a $25,472.04 deficit.
Charge six alleges that the respondent commingled his personal funds with client funds when he deposited two checks totaling $74,600 into the IOLA account on November 23, 2016, which consisted of settlement funds from the respondent's own personal injury case, in violation of rule 1.15(a) of the Rules of Professional Conduct.
Charge seven alleges that between approximately July 2016 and April [*3]2017, the respondent failed to maintain an accurate record of all financial transactions in the IOLA account, in violation of rule 1.15(d) of the Rules of Professional Conduct.
Based upon the foregoing, charge eight alleges that the respondent engaged in conduct that adversely reflects on his fitness as a lawyer, in violation of rule 8.4(h) of the Rules of Professional Conduct.
The Hearing Evidence 
The Grievance Committee's investigation was prompted by a notice of a dishonored check for $88,000 from the IOLA account. The respondent testified that he represented Rice in the sale of Rice's residence. On or about July 28, 2016, the respondent deposited $88,000 into the IOLA account, representing the down payment for the real estate sale. The closing took place in November 2016, and the respondent issued a check for $88,000 to Rice on the day of the closing. Rice did not attempt to deposit the check until approximately six months later. The respondent testified that when Rice attempted to deposit the check, the bank called the respondent to inform him that a check was being presented for $88,000 from the IOLA account. The respondent did not recall issuing the check and instructed the bank to stop payment immediately, believing it was a fake check. The respondent later discovered that the check was issued to Rice, and the respondent reached out to Rice to explain what happened. Around the same time, the respondent was transitioning the IOLA account at Capital One Bank to another escrow account at Signature Bank. The respondent deposited $90,000 of his personal funds into the Signature Bank escrow account and wired $88,000 to Rice in May 2017.
Three months before there was initially a deficiency in the IOLA account as charged in the petition, in March 2016, the respondent's daughter was struck by a freight train in Texas and left at the side of the road. The daughter was on a teaching assignment for Teach for America in Texas. She suffered traumatic injuries, including amputation of her leg, partial amputation of her hand, severe brain injuries, and other significant injuries which required extensive ongoing treatment. The respondent's wife stayed in Texas for four months to oversee the daughter's hospitalization, surgeries, and rehabilitation. The respondent traveled back and forth to Texas as often as possible, but also needed to attend to his youngest son, who was a high school student. The respondent's wife and daughter returned to New York. For the next year, the daughter underwent additional surgeries and continued to address the effects of her injuries. Throughout this period, she suffered seizures and required regular assistance from her family, including being accompanied to her physical and occupational therapy sessions.
The respondent admitted that during the aftermath of his daughter's accident, he was not focusing on his practice and was depositing his own funds in the IOLA account so that he did not have to pay attention to it. However, when he realized an unusually high balance in the IOLA account, failing to realize that a client had not cashed an $88,000 check, he began withdrawing the funds without first reconciling the account. The respondent admitted that he was wrong, that he should have reviewed his records, and that he should have asked for help when he was first distracted during the aftermath of his daughter's accident.
Findings and Conclusion 
In view of the respondent's admissions and the evidence adduced at the hearing, we find that the Special Referee properly sustained the eight charges. Accordingly, the respondent's and the Grievance Committee's separate motions to confirm the Special Referee's report are granted.
In determining an appropriate measure of discipline, the Court took into consideration that the misconduct took place in the midst of the respondent's daughter's survival from the tragic accident and the respondent fully admitted and took responsibility for his misconduct from the beginning of the investigation. The respondent also submitted mitigating evidence of his personal medical problems, the remedial measures he implemented concerning his escrow account, and positive character evidence, including his contributions to his local community. In aggravation, the respondent was previously admonished in 2005.
Given the extraordinary circumstances of this case, we conclude that the appropriate sanction is a public censure.
LASALLE, P.J., DILLON, DUFFY, BARROS and CHRISTOPHER, JJ., concur.
ORDERED that the respondent's and the Grievance Committee's separate motions to confirm the report of the Special Referee are granted; and it is further,
ORDERED that the respondent, Patrick Johnson, admitted as Patrick W. Johnson, is publicly censured for his professional misconduct.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court